**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER MANSION,<br>Plaintiff,<br>v.<br>ELI LILLY AND CO.,<br>Defendant. | Civil Action No. 25-17282 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Eli Lilly and Co.'s ("Defendant") Motion to Dismiss or in the Alternative to Transfer Venue ("Motion to Dismiss") (ECF No. 13) Plaintiff Jennifer Mansion's ("Plaintiff") Complaint (ECF No. 1). Plaintiff opposed (ECF No. 15), and Defendant replied (ECF No. 19). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Defendant's Motion to Dismiss.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiff is a former employee of Defendant. (Compl. ¶ 1., ECF No. 1.) Defendant is an Indiana corporation headquartered in Indiana. (Compl. ¶¶ 2, 5.) Defendant operates a pharmaceutical production facility in New Jersey, where it manufactures Mounjaro. (*Id.* ¶ 2.)

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Plaintiff was hired in Defendant's "Dallas West District in Dallas, Texas as a Senior Territory Manager, pharmaceutical sales representative in the Dallas Diabetes Business Unit for the Plano, Texas territory on October 3, 2022." (*Id.* ¶ 6.) Plaintiff's duties included presenting the drugs Trulicity, Jardiance, and Mounjaro, as well as launching the sale of Mounjaro. (*Id.* ¶¶ 7, 11.)

On May 13, 2022, the FDA approved Mounjaro to be advertised to improve blood sugar in adults with Type 2 Diabetes. (*Id.* ¶ 22.) Soon after the launch of Mounjaro, Plaintiff observed her colleagues promote the drug to weight loss providers to treat obesity. (*Id.* ¶¶ 42-43.) On several occasions, Plaintiff verbally communicated to Dwanita Roquemore ("Roquemore"), Defendant's "Senior Business Director for the Dallas West, Texas Diabetes Business Unit[,]" that she was concerned that a large number of providers were writing off-label prescriptions for Mounjaro. (*Id.* ¶¶ 13, 44-45, 47.) Plaintiff informed Abbey Swhear ("Swhear"), Defendant's Associate Director of Global Human Resources Investigations, via e-mail message about her concerns over Defendant training its employees to promote the off-label use of Mounjaro. (*Id.* ¶¶ 18, 46.) On or about June 23, 2023, Plaintiff had a teleconference with Eric McCray ("McCray"), Defendant's "Associate Director of Global Human Resources Investigations[,]" to discuss concerns and objections to the off-label use of Mounjaro. (*Id.* ¶¶ 19, 48.)

After a death in the family, Plaintiff requested bereavement paid time off, and Roquemore asked for specific details concerning the death, which made Plaintiff uncomfortable. (*Id.* ¶ 49.) Plaintiff then went to her doctor because of the stress and anxiety that she was experiencing while working for Defendant, and the fact that she did not believe that Human Resources was taking her complaints about the off-label promotion of Mounjaro seriously. (*Id.* ¶ 50.) Plaintiff's doctor provided her with a note to excuse her from work for at least seven to ten days. (*Id.*) Plaintiff then sent an e-mail message to McCray, providing him with text messages and a timeline showing that

Roquemore was treating her differently than other territory managers. (*Id.* ¶ 51.) In or around July or August of 2023, Plaintiff asked Roquemore to be transferred to a new territory "because she did not want to work with . . . [Lori] Elmore [('Elmore'), Plaintiff's partner and Senior Territory Manager,] any longer due to her continued promotion of off-label use of Mounjaro[,]" but "[h]er request was denied." (*Id.* ¶¶ 15, 52.)

Plaintiff applied for a position with a different team promoting Zepbound. (*Id.* ¶ 53.) Following her application, Roquemore called Plaintiff to discuss her request to apply for another position and expressed that she was angry and offended that Plaintiff wanted to leave her team. (*Id.* ¶ 54.) Plaintiff had a subsequent teleconference with Swhear and McCray to discuss her concerns about Defendant's promotion of Mounjaro for off-label use. (*Id.* ¶ 55.) Despite Plaintiff's objections, however, no policy changes were made. (*Id.* ¶ 55.) Plaintiff thereafter sent photographs supporting her grievance of discriminatory treatment—including exemplars of other employees requesting time off and not receiving the same degree of skepticism that she had—to McCray and Swhear. (*Id.* ¶ 56.) Plaintiff "requested a mediation to assist with issues she was experiencing with . . . Roquemore and . . . Elmore, or a transfer to another unit." (*Id.* ¶ 57.) These requests were denied. (*Id.* ¶ 57.) On September 14, 2023, Plaintiff sent Swhear an e-mail message "to see if she had any updates regarding her complaints of [Defendant] promoting the off-label use of Mounjaro and the retaliation she had been experiencing." (*Id.* ¶ 58.) On or about September 19, 2023, Plaintiff and Swhear had a teleconference to discuss that Plaintiff had provided Roquemore with proof that Defendant's employees were "promoting the off-label use of Mounjaro and that . . . Roquemore had dismissed [Plaintiff's] concerns." (*Id.* ¶ 59.)

On October 31, 2023, Plaintiff sent Ryan Hubbs ("Hubbs"), Defendant's "Associate Human Resources Investigator[,]" two e-mail messages. (*Id.* ¶¶ 60-61.) The first included

information to support her claims of ongoing retaliation by Roquemore, and the second discussed the fact that she believed she was retaliated against by Roquemore when she was turned down for the open position on the Zepbound team. (*Id.* ¶¶ 60-61.) On November 7, 2023, Plaintiff sent e-mail correspondence to Hubbs "to inform him of another example in which . . . Roquemore treated other Territory Managers differently than her." (*Id.* ¶ 62.) On November 8, 2023, Plaintiff met with Pankaj Kumar Choudhary, Associate Vice President Human Resources Investigations and Screening Chief Operating Officer, to request that she be treated fairly and impartially by Roquemore. (*Id.* ¶ 63.) On November 9, 2023, Plaintiff had a teleconference with Steve Cohen ("Cohen"), Vice President and Chief Compliance Officer, regarding "[Defendant's] [Employment Assistance Program] and short[-]term disability due to the effects of the mistreatment and retaliation [Plaintiff] had been experiencing at [Defendant] for bringing up [Defendant's] promotion of Mounjaro for off-label use." (*Id.* ¶ 64.) Plaintiff was terminated from her position that same day. (*Id.* ¶ 65.)

**B. Procedural Background**

Plaintiff filed her Complaint on November 7, 2025. (*See* Compl.) Plaintiff's Complaint asserts five causes of action against Defendant: (1) retaliation against whistleblower in violation of 31 U.S.C. § 3730(h) ("Count One"); (2) retaliation against whistleblower in violation of the Texas Medicaid Fraud Prevention Act ("Count Two"); (3) common law retaliation against whistleblower in violation of Texas public policy ("Count Three"); (4) discrimination in violation of 42 U.S.C. § 1981 ("Count Four"); and (5) retaliation in violation of 42 U.S.C. § 1981 ("Count Five"). (*Id.* ¶¶ 79-111.) Defendant thereafter filed the instant Motion to Dismiss. (Def.'s Mot. to Dismiss, ECF No. 13.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 15), and Defendant replied (Def.'s Reply, ECF No. 19).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure[2] 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (second alteration in original) (internal quotation marks and citations omitted). In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citations omitted). "[P]arties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citation omitted).

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15, 414 n.9 (1984)).

General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home[]' . . . are the corporation's place of incorporation and its principal place of business." *BNSF By. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *Daimler*, 571 U.S. at 137, 134). Specific jurisdiction allows a court to exercise jurisdiction over a non-resident defendant where: (1) the

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum"; (2) the litigation "aris[es] out of or relate[s] to the defendant's contacts with the forum"; and (3) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923-24 (alterations in original) (citations omitted).

When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Still, the plaintiff must establish "'with reasonable particularity sufficient contacts between the defendant and the forum state'" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of [personal] jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (Scirica, J., concurring) (first and second alteration in original) (internal citation and quotation marks omitted). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, 66 n.9 (3d Cir. 1984). If the plaintiff meets this burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable. *Mellon Bank*, 960 F.2d at 1226 (citations omitted).

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint on several grounds, including that this Court lacks personal jurisdiction over it. (Def.'s Moving Br. 6-9, ECF No. 13-1.) Because personal jurisdiction is a threshold issue bearing on the judicial power to resolve a suit, the Court first addresses whether it has personal jurisdiction over Defendant. *See Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-85 (1999)).

### A. General Jurisdiction

Defendant argues that this Court lacks general jurisdiction over it because it is an Indiana corporation. (Def.'s Moving Br. 7-8.) To establish general jurisdiction over a defendant, a plaintiff must show that the defendant is essentially "at home" in the state a lawsuit is filed. *Daimler*, 571 U.S. at 122. As discussed above, "[t]he 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF*, 581 U.S. at 413 (citing *Daimler*, 571 U.S. at 137); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016). In fact, in all but "exceptional case[s]," a corporation is "essentially at home" and thus subject to general jurisdiction in its state of incorporation and its principal place of business. *Daimler*, 571 U.S. at 139, 139 n.19.

Plaintiff does not argue that this Court can exercise general jurisdiction over Defendant. (*See* Pl.'s Opp'n Br. 16-20.) Defendant, moreover, is an Indiana corporation with its headquarters in Indianapolis, Indiana. (Compl. ¶ 2.) The Court, accordingly, lacks general jurisdiction over Defendant. *See BNSF*, 581 U.S. at 413 (citing *Daimler*, 571 U.S. at 137).

### B. Specific Jurisdiction

Defendant next argues that this Court does not have specific jurisdiction over it because Plaintiff's alleged injuries "have no connection to New Jersey." (Def.'s Moving Br. 8-9.) Plaintiff argues in opposition that because Defendant manufactures Mounjaro in New Jersey, this Court has specific jurisdiction over Defendant. (Pl.'s Opp'n Br. 16-19.)

The Supreme Court has articulated two tests for specific jurisdiction: (1) the "traditional" test—also called the "minimum contacts" or purposeful availment test, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 474, 475 (1985) (quoting *Int'l Shoe Co. v. State of Wash, Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)); and (2) the so-called *Calder* "'effects' test," *Calder v. Jones*, 465 U.S. 783, 787 n.6 (1984). The traditional test and the *Calder* effects test have distinct requirements, and both tests should be considered. *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 189 (3d Cir. 2024) (explaining that "the effects test . . . require[s] that the tortious actions of the defendant have a forum-directed purpose" whereas "the traditional specific jurisdiction analysis simply requires that the plaintiff's claims arise out of or relate to the defendant's forum contacts") (citation omitted). Here, as discussed below, the Court does not have specific jurisdiction under either test.

#### *1. The Traditional Test*

The traditional test for specific jurisdiction focuses on a defendant's "minimum contacts" with the forum state and entails a three-step analysis. *O'Connor*, 496 F.3d at 316-17. *First*, the defendant must have "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State[.]'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1987)). This prong of the analysis requires that the defendant had "minimum contacts with the forum state that

show the defendant took a deliberate act reaching out to do business in that state." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (citation omitted). *Second*, the plaintiff must show its claims "'arise out of or relate to'" at least one of those contacts or activities. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Helicopteros*, 466 U.S. at 414). Courts have consistently emphasized that "[f]or the contacts to satisfy the second prong, there must be 'a strong relationship among the defendant, the forum, and the litigation.'" *Hepp*, 14 F.4th at 208 (citation modified). *Third*, even where the foregoing requirements are met, the Court must be satisfied that the exercise of personal jurisdiction "'comports with traditional notions of fair play and substantial justice'" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Toys "R" Us*, 318 F.3d at 451 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Under the traditional test, taking Plaintiff's allegations as true, Defendant *has* taken a deliberate act to do business in New Jersey by manufacturing Mounjaro in the State; however, Plaintiff's claims do not arise out of Defendant's contacts with the State. (*See generally* Compl.) Plaintiff, a Texas based employee, does not allege: (1) that she ever worked in New Jersey; (2) that any of her supervisors worked in New Jersey; (3) that any of her complaints were made to employees of Defendant who worked in New Jersey; (4) that she ever communicated with any of Defendant's employees in New Jersey; or (5) that anyone in New Jersey had anything to do with the alleged retaliation or discrimination. (*See generally* Compl.) Plaintiff's claims against Defendant are premised on and arise entirely out of Defendant's retaliatory and discriminatory conduct against Plaintiff, as an employee of Defendant, who was employed in Texas, and retaliated against by other employees who were also employed in Texas. (*See id.* ¶ 6 (explaining that Plaintiff was hired by Defendant "in its Dallas West District in Dallas, Texas as a Senior Territory Manager,

pharmaceutical sales representative in the Dallas Diabetes Business Unit for the Plano Texas territory"); *id.* ¶ 13 (noting that Plaintiff's supervisor, Roquemore, was the "Senior Business Director for the Dallas West, Texas Diabetes Business Unit"); *id.* ¶ 15 (explaining that Elmore was Plaintiff's "partner in her [Texas] territory").) The connection between the complaints that Plaintiff made in Texas about how Defendant's employees were promoting Mounjaro and Defendant's retaliation and discrimination based on those complaints are far too attenuated from Defendant's New Jersey manufacturing of Mounjaro to confer personal jurisdiction in this action over Defendant. *See Doe v. Wyndham Hotels & Resorts, Inc.*, No. 25-687, 2026 WL 73727, at *4 (D.N.J. Jan. 9, 2026) (finding that "the connection between the conduct underlying [p]laintiff's claim and [New Jersey was] too attenuated to find specific personal jurisdiction" where the injury and underlying conduct "occurred in Florida").

Plaintiff, moreover, did not submit any affidavits or other evidence in connection with her opposition to [Defendant's] Motion and accordingly has failed to meet her "burden of proving by affidavits or other competent evidence that jurisdiction [over Defendant] is proper.'" *Higgins v. Newsmax Broad. LLC*, No. 23-3628, 2024 WL 3064844, at *8 (D.N.J. June 20, 2024) (quoting *Smith v. Zimmer US, Inc.*, No. 19-6863, 2020 WL 487029, at *1 (D.N.J. Jan. 29, 2020)). Plaintiff has, accordingly, failed to meet the threshold of establishing "a strong relationship among the [D]efendant, the forum, and the litigation" sufficient to show that this Court can exercise jurisdiction over Defendant. *Hepp*, 14 F.4th at 208 (citation modified). The Court therefore finds that it lacks specific jurisdiction under the traditional test.

### 2. *The Calder Effects Test*

The alternative test, the "*Calder* effects test," was recognized by the Supreme Court in *Calder v. Jones*, holding that under certain circumstances involving intentional torts, the

jurisdictional analysis may focus on a defendant's intention to affect or reach the forum state with its alleged misconduct. 465 U.S. at 789-90. The *Calder* effects test requires a plaintiff to allege:

> (1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity . . . .

*Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 500 (D.N.J. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). The *Calder* effects test, as interpreted by the Third Circuit, provides that a defendant's "conduct and connection with the forum State [must be] such that [the defendant] should reasonably anticipate being haled into court there." *Marten*, 499 F.3d at 297 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). To assert specific personal jurisdiction under this test, a plaintiff must allege "claim-specific jurisdiction over [d]efendant[]," meaning "'an affiliatio[n] between the forum and the underlying controversy[.]'" *Christie*, 258 F. Supp. 3d at 499 (second alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)).

Here, Plaintiff fails to satisfy the *Calder* effects test. As discussed above, Plaintiff's Complaint fails to adequately allege, and Plaintiff fails to establish that Defendant's conduct—the retaliation and discrimination against Plaintiff, a Texas based employee—would lead Defendant to reasonably anticipate being haled into court in New Jersey. (*See generally* Compl.) Plaintiff's Complaint also fails to adequately allege that Defendant expressly aimed its tortious conduct at the State. (*See generally id.*) As such, this Court cannot exercise specific personal jurisdiction over Defendant under the *Calder* effects test. *See Atcom Support LP v. Maria*, No. 15-28, 2016 WL 4118914, at *4 (D. Del. Aug. 1, 2016) ("Specific Jurisdiction cannot be met" because the "claim

does not arise from [the defendant's] business in [the forum state]."), *R. & R. adopted*, No. 15-28, 2016 WL 5867407 (D. Del. Oct. 4, 2016).[3]

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, Defendant's Motion to Dismiss is granted.[4] The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: AUGUST 28th, 2026

[3] Plaintiff argues in opposition that this Court should permit limited discovery on the issue of personal jurisdiction. (Pl.'s Opp'n Br. 19.) Plaintiff, however, does not explain what information she would seek in such limited discovery. (*See id.*) The Court, accordingly, denies Plaintiff's request for jurisdictional discovery. *See Abira Med. Lab'ys, LLC v. Blue Cross of Idaho Health Serv., Inc.*, No. 23-3665, 2024 WL 3594410, at *5 n.5 (D.N.J. July 30, 2024) (finding there was "no reason to grant discovery [where plaintiff] ha[d] not offered a sense of what relevant jurisdictional facts discovery might uncover"); *see also Edelson V, L.P. v. Encore Networks, Inc.*, No. 11-5802, 2012 WL 4889439, at *6 (D.N.J. Aug. 13, 2012) (recommending the court decline plaintiff's request for jurisdictional discovery where plaintiff had "not demonstrated how, or why, jurisdictional discovery would be beneficial or suggested what it would expect to discover"), *R. & R. adopted sub nom., Edelson V., L.P. v. Encore Networks, Inc.*, No. 11-5802, 2012 WL 4891695 (D.N.J. Oct. 12, 2012).

[4] "Becasue the Court finds that it does not have personal jurisdiction over Defendant, it will not address [the parties' remaining] arguments[,]" including those regarding transfer. *Walter v. Old No. 77 Hotel & Chandlery*, No. 23-30, 2024 WL 1347392, at *6 n.6 (D.V.I. Mar. 28, 2024); *see also Myers v. Berry*, No. 17-4417, 2018 WL 1904197, at *2 n.3 (D.N.J. Apr. 20, 2018) ("Because the Court lacks personal jurisdiction over [d]efendant[], it declines to consider [d]efendant['s] remaining arguments.").